The Honorable Dave Bisbee State Representative 14068 Pyramid Drive Rogers, Arkansas 72758-0116
Dear Representative Bisbee:
This is in response to your request for an opinion on two questions concerning Act 1258 of 1997, which authorizes the apportionment of community college director positions among the school districts making up the community college district. That act, which is codified at A.C.A. §6-61-530 (Supp. 1997), provides as follows:
 Beginning with the 1998 election, if the members of the local board of a community college are elected at large and the community college district is composed of more than one (1) school district, but not all the school districts in the county, the board may apportion a certain number of positions on the board for each school district according to the most recent census information, so long as all board members are residents and qualified electors of the community college district and the school district.
You state that the Northwest Arkansas Community College Board of Trustees would like to apportion the nine positions on the board among the school districts which comprise the community college district pursuant to the board's authority to do so under A.C.A. § 6-61-530. Based on the 1990 federal decennial census, the board has calculated 5.61 positions for Rogers School District (.62299 x 9 board positions) and 3.39 for Bentonville School District (.37616 x 9 board positions).
Your questions in light of these facts and the relevant provision are as follows:
 1. Would apportioning five positions to Rogers School District and four positions to Bentonville School District be in compliance with § 6-61-530?
 2. If the board apportions the positions among the school districts now, does § 6-61-530 prohibit the board from later reestablishing elections for all positions on an at-large basis?
The relevant act does not specify a formula for the apportionment of the positions. It states merely that the board "may apportion a certain number of positions on the board for each school district. . . ." The use of the word "apportion," implies, in my opinion, however, the use of population data to arrive at a representative allotment. The word "apportion" has been defined as meaning "to divide and distribute proportionally."Black's Law Dictionary, (5th Ed. 1989) at 91. See also Webster's SeventhNew Collegiate Dictionary, (1972) at 43 (defining "apportion" as meaning "to make a proportionate division or distribution of"). The Arkansas Supreme Court has had occasion to define the word "apportionment." InBailey, Lieutenant Governor v. Abington, 201 Ark. 1072, 148 S.W.2d 176
(1941), the court stated that "`[a]pportionment' and `reapportionment' used in the amendment, necessarily mean the dividing of the state into districts so that each district has a certain population, and dividing the representatives and senators so that each county shall have representation according to its population." In my opinion, therefore, the use of population figures is required in order to "apportion" the positions among school districts.
Your first question is whether a proposed apportionment of five members for the Rogers School District and four for the Bentonville School District is consistent with the statute. Presumably, the question involves the legality of this distribution, when a distribution of six members for the Rogers School District and three members for the Bentonville School District would appear more proportional, in light of the figures you mention.
I must note in response to your first question that I have not been provided with the actual population figures on which these calculations are based. I cannot, therefore, in the context of a bare legal opinion, determine whether the calculations are in all respects correct. That being said, it is my opinion, based upon the figures presented, that a question is raised under the statute as to whether the proposed apportionment is consistent with law. The statute authorizes the district to "apportion" the positions among the school districts. Although a perfect apportionment is not possible in this instance, a question arises as to whether any apportionment made must be as nearly mathematically proportional as is practicable. Again, I do not have all the figures, and cannot opine upon the correctness of the calculations, but in my opinion, the statute requires a proportional distribution.
The same result is required for another reason. The requirements relating to the concept of "one man, one vote" under the Fourteenth Amendment to the U.S. Constitution are applicable to community college districts.Hadley v. Junior College District, 397 U.S. 50 (1970). The principle applies to instances where, as here, members of an elected body are chosen from separate districts. Id. at 56. This concept is important in addressing your question for two reasons. First, of course, in order to ensure against any successful constitutional challenge to any proposed apportionment, the relevant tests under this concept must be satisfied. Second, the statute in question (A.C.A. § 6-61-530), will be construed, if possible, as constitutional. It may thus be construed to require the same type of representation required under the "one man, one vote" test. Again, I do not have all the pertinent population data, and thus do not know whether the proposed apportionment would in fact satisfy or run afoul of this concept, but I can set out the fundamentals of the constitutional test.
The first step in analyzing the compliance of a district with the "one man, one vote" principle is to determine the degree of deviation among districts. This is accomplished by taking the total population of a represented area (in this case the community college district), and dividing it by the number of elected positions (in this case nine). This calculation produces the ideal number of persons to be represented by one elected official. This number is then compared to the actual number of persons represented under whatever representation is in effect or proposed — for example, in the facts you recite, the number of persons represented by apportioning five directors to the Rogers School District and the number represented by apportioning four to the Bentonville School District. These numbers are compared against the ideal number calculated earlier. The difference in them is divided by the ideal population to arrive at a percentage of variance (the percentage by which the population difference varies from the norm).
If the number of persons to be represented under a particular proposed apportionment is more than the ideal population figure, the variance is a plus variance and the group is under represented. If the number of persons represented is smaller than the ideal number, the variance is a negative variance and the group is over represented. Courts addressing "one man, one vote" requirements are interested in what is called the "maximum deviation," and this figure is arrived at by adding the largest plus variance and the largest minus variance. In the facts you present there will only be two variances (the figure will be the same for each director position in the Rogers district, and for each director position in the Bentonville district).
The law on this subject is too complex and detailed to summarize in an Attorney General's opinion. It is sufficient to state herein that a maximum deviation of more than ten percent is cause for concern under the "one man, one vote" test. Again, I do not have the figures and do not know whether the proposed apportionment you describe would comply with this test.
In response to your second question, concerning a later reversion to at-large districts, it is my opinion that nothing in A.C.A. § 6-61-530
would prohibit the board from later reestablishing the positions on an at-large basis. The statute speaks in permissive terms. That is, it provides that a community college board "may" apportion a certain number of positions per school district. Absent some constitutional or other statutory prohibition, therefore, I do not see a prohibition in A.C.A. §6-61-530 against a reversion to at-large representation.
The foregoing opinion, which I hereby approve, was prepared by Deputy Attorney General Elana C. Wills.
Sincerely,
WINSTON BRYANT Attorney General
WB:ECW/cyh